UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                  :
                                           :
                                           :        21 Cr. 64 (PAC)
                                           :
            - v -                          :        **OPINION & ORDER**
                                           :
SADICK EDUSEI KISSI,                       :
                                           :
                      *Defendant.*         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

On June 2, 2022, following a four-day trial and two days of deliberations, a jury convicted Defendant Sadick Edusei Kissi on three out of four counts arising from his involvement in a scheme of predatory financial and romance scams conducted through email, online dating services, and other electronic means.  Kissi now renews his Rule 29 motion for acquittal on all counts, arguing that the Government failed to offer evidence at trial sufficient to prove that he knowingly and willfully became a member of the charged conspiracies, and relatedly, that he knew that the money he received had been unlawfully taken.

Having carefully reviewed the parties' arguments and the underlying record in the light most favorable to the Government—as it must do when adjudicating a Rule 29 motion—the Court disagrees.  Therefore, for the reasons set forth further below, the Rule 29 motion for acquittal is **DENIED**.

## BACKGROUND

In February 2021, Kissi was arrested and charged for his alleged role in a criminal enterprise (the "Enterprise") that specialized in scamming individuals and businesses located across the United States.  (*See* Indictment, ECF No. 2.)  The Indictment alleges that members of the Enterprise used email, text messaging, and online dating sites to trick victims into transferring hundreds of thousands of dollars into Enterprise-controlled accounts.  (*Id.*)  As to Kissi's specific,

personal involvement, the Indictment alleges he deposited proceeds from fraud victims into bank accounts he controlled in New York and elsewhere. (*Id.*) Once he received these funds, Kissi was alleged to have withdrawn, transported, and laundered the money to other members of the Enterprise located in Ghana. (*Id.*)

Based on these allegations, the Indictment charged Kissi with four counts: conspiring to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One); conspiring to launder these funds in violation of 18 U.S.C. § 1956(h) (Count Two); conspiring to receive stolen money in violation of 18 U.S.C. § 371 (Count Three); and receiving stolen money in violation of 18 U.S.C. § 2315 (Count Four). (*Id.*)

The trial commenced on May 25, 2022. In its case-in-chief, the Government called eight witnesses and introduced 196 exhibits, including, *inter alia*, bank records, other financial records, phone logs, and chat transcripts involving Kissi and his co-conspirators. The witnesses included several romance scam victims who had sent thousands of dollars to Kissi's bank accounts; an additional victim who had transferred money to an alleged co-conspirator acting in concert with Kissi, Mubarak Baturi; Baturi himself, pursuant to his cooperation agreement with the Government; a forensic accountant who testified as to the small fraction of the money flowing through Kissi's account that was attributable to legitimate sources such as employment (and the even smaller fraction that Kissi paid taxes on); and a TD Bank investigator who had investigated suspected fraud activity in Kissi's bank account.

For his part, Kissi did not call any witnesses. His case-in-chief consisted of a single stipulation read into the record and one additional exhibit. (*See* Trial Tr. at 512:19–516:15.)

At the close of the Government's case-in-chief, Kissi moved for—and the Court denied— a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (Trial Tr.

at 512:18–23, 517:2–518:11.)[1]  Two days later, on June 2, 2022, the jury returned its verdict, finding Kissi not guilty on the wire fraud conspiracy count (Count One), but guilty on all other counts, including conspiracy to launder money, conspiracy to receive stolen money, and receipt of stolen money (Counts Two, Three, and Four, respectively).  (Jury Verdict, ECF No. 65.)

Kissi then renewed his Rule 29 motion (Trial Tr. at 673:4), and the parties proceeded to brief the issue.  This Opinion addresses Kissi's renewed motion.

## DISCUSSION

### I.    Legal Standard

Rule 29 of the Federal Rules of Criminal Procedure provides that a judgment of acquittal must be entered for "any offense for which the evidence is insufficient to sustain a conviction." However, a defendant bears a "heavy burden" in seeking to overturn a conviction on this basis. *United States v. Jones*, 965 F.3d 190, 193 (2d Cir. 2020)[2] (internal quotation marks omitted).  The Court reviews the evidence "in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government," *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) (internal quotation marks omitted), and must therefore "resolve all issues of credibility in favor of the jury verdict." *Jones*, 965 F.3d at 193.  "The question is not whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) (cleaned up) (emphasis in original).  Therefore, "[a] judgment of acquittal can be entered only if the evidence that the defendant committed the crime alleged is nonexistent or so meager" as to

---

[1] The Trial Transcript is docketed at ECF Nos. 66, 68, 70, 72, 74, 76.

[2] *Cert. denied*, 141 S. Ct. 2795 (2021).

entirely preclude a rational guilty verdict. *Jones*, 965 F.3d at 193.

In assessing a sufficiency challenge, the Court reviews the evidence "in its totality, not in isolation." *Anderson*, 747 F.3d at 59 (internal quotation marks omitted). The Government "need not negate every theory of innocence," and "may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 63–64 (2d Cir. 2002). "Both the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence." *United States v. Stewart*, 485 F.3d 666, 671 (2d Cir. 2007). However, "[w]here the Government asks the jury to find an element of the crime through inference, the jury may not be permitted to conjecture or to conclude upon pure speculation or from passion, prejudice or sympathy." *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016) (cleaned up). Rather, those inferences must be "sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (internal quotation marks omitted).

Still, courts must be "careful not to usurp the role of the jury," whose responsibility it is to "choose among competing inferences" and "assess the weight of the evidence." *United States v. Jabar*, 19 F.4th 66, 76, 81 (2d Cir. 2021)[3] (internal quotation marks omitted). In a conspiracy case, the deference accorded to a jury's verdict is "especially important because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (internal quotation marks omitted).

---

[3] *Cert. denied sub nom. Bowers v. United States*, 142 S. Ct. 1396 (2022).

4

## II.      Analysis

Kissi does not challenge the lion's share of the Government's case.  Instead, he aims a single overarching attack on his conviction: that the Government failed to prove he had "knowledge of the unlawfulness of the source of money" that he was alleged to have conspired to launder and receive—a necessary element of all three counts of conviction. (Def.'s Mem. at 2, ECF No. 79.)  Specifically, Kissi argues (1) the Government's cooperating witness, Baturi, was not credible; (2) the remaining evidence of Kissi's state of mind was insufficient; and (3) the Government overstated and misstated the evidence in its closing.

The Court addresses, and rejects, each argument in turn.

### A. Baturi's Credibility

Kissi first argues that the Government's case concerning his state of mind "hinged" on Baturi's testimony, and that this testimony was "simply not credible." (Def.'s Mem. at 3–5.)  Kissi emphasizes that Baturi "admitted to lying repeatedly," "gave conflicting testimony," and "had clear incentives to lie in this case." (*Id.*)

Even assuming Kissi is correct, Rule 29 offers him little comfort.  Credibility determinations are "the province of the jury and not of the court." *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011).  Accordingly, courts must "resolve all issues of credibility in favor of the jury verdict." *Jones*, 965 F.3d at 193.  Furthermore, as the jury was instructed in this case,[4] it was entirely permissible for the jury to conclude that "a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the

---

[4] The Court instructed the jury in the following manner with respect to cooperating witnesses: "As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept their testimony in other parts, or you may disregard all of it." (Trial Tr. at 607:18–22.)

essentials of his testimony." *O'Connor*, 650 F.3d at 855 (although several indicators of dishonesty, including past perjury, "surely impaired [a cooperating witness's] credibility, none of them rendered his testimony incredible as a matter of law"); *see also United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012) ("[E]ven the testimony of a single accomplice witness is sufficient to sustain a conviction, provided that it is not incredible on its face or does not defy physical realities.") (internal quotation marks omitted).

The Court therefore declines Kissi's invitation to substitute the jury's credibility findings with its own, and denies his bid for acquittal on this basis.

## B. Other Evidence of Kissi's State of Mind

Beyond Baturi's testimony, Kissi next takes aim at the Government's remaining evidence that Kissi fully understood, and intended to further, the Enterprise's purposes. First, he argues the Government failed to establish that the cell phone communications in GX 201 in fact involved him at all. And second, Kissi argues that the evidence of his state of mind *other* than Baturi's testimony and GX 201 is "speculative at best and requires a significant level of assumption and conjecture" from the jury. (Def.'s Mem. at 9–10.) The Court rejects both arguments.

*GX 201.* With respect to the phone communications in GX 201, Kissi argues the Government failed to establish that the phone number tied to several incriminating communications belonged to him. The Government introduced evidence that Kissi controlled two separate numbers: a "347" phone recovered when he was arrested, and the "233" number featured throughout GX 201. The crux of Kissi's argument is that these two numbers could not possibly have both belonged to Kissi. Not only, he observes, were both numbers participants in the same group chats, but they even exchanged messages "exclusively between the two of them, making it clear that the numbers belonged to two separate individuals." (Def.'s Mem. at 6.)

But viewing this evidence in the light most favorable to the Government, it was plausible for a rational jury to conclude otherwise. The "233" number was stored in Baturi's phone as belonging to "Mayor Papik," Kissi's nickname. (GX 201, 301.) Kissi's bank account information was sent to Baturi from this number—and soon thereafter, Baturi sent a photo to the "233" number confirming that he had deposited $5,000 into the Kissi account. (GX 201.) And perhaps most notably, an invitation to Kissi's wedding was sent to Baturi from this number. (*Id.*) There was, in sum, no shortage of evidence tying Kissi to the "233" number.

While the Court recognizes the appeal of Kissi's argument that it would be unusual for the same person to communicate with himself using multiple phones, it was entirely permissible for the jury to prefer a different common-sense conclusion: that a phone associated with a person's nickname, sharing his personal information, and discussing his personal affairs, in fact belonged to that person. *See United States v. Akefe*, No. 09-CR-196 (RPP), 2010 WL 2899805, at *15–17 (S.D.N.Y. July 21, 2010) (holding that the "jury was entitled to use its common sense" in determining the participants of a phone conversation from the contents and context of the communication) (quoting *United States v. Huezo*, 546 F.3d 174, 182 (2d Cir. 2008)).

***Other Evidence.*** The jury was permitted to apply that same common sense to determine whether other evidence demonstrated that Kissi had the requisite knowledge and intent to sustain his convictions. The Government presented evidence of hundreds of thousands of dollars flowing through Kissi's account, unexplained by any professional or other legitimate source of income. (*See generally* GX 401.) Many of those transfers were accompanied by memo lines reflecting "purchases" that the senders admit they never received and never intended to receive, and that no evidence suggested Kissi ever provided. (*See, e.g.*, Trial Tr. at 92:3–5; GX 401 at 15.) Financial records and testimony at trial demonstrated that this pattern continued for years, even as (and after)

Kissi's bank accounts were repeatedly shut down by bank officials in charge of investigating fraud. (Trial Tr. at 231:10–13, 459:1–463:16; GX 401 at 29–34.)

Not only did this constitute yet more evidence probative of Kissi's actual knowledge, but—even setting aside the other evidence of actual knowledge—it was, on its own, sufficient for a jury to convict Kissi on a "conscious avoidance" theory. *See United States v. Kozeny*, 667 F.3d 122, 133–34 (2d Cir. 2011) ("[T]he same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct.") (internal quotation marks omitted); *United States v. Stinn*, 379 F. App'x 19, 21 (2d Cir. 2010) ("[A] conscious avoidance instruction is proper even where the government's primary theory is that defendant had actual knowledge.") (summary order citing *United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995)). Here, the jury was instructed that, "[i]n determining whether Mr. Kissi acted knowingly," it was permitted to consider "whether he deliberately closed his eyes to what otherwise would have been obvious," and, if so, that it "may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge."[5] (Trial Tr. at 643:5–644:17.)

Although contrary inferences may also have been possible, it was entirely permissible for a jury to affix the "conscious avoidance" label to Kissi's conduct. At trial, the jury was presented with (largely undisputed) evidence of a defendant with an uneven employment record suddenly

---

[5] The Court clarified that although a conscious avoidance theory "cannot be used as a basis for finding that Mr. Kissi knowingly joined the conspiracy," the jury was permitted to "consider whether he deliberately avoided confirming an otherwise obvious fact, such as that the purpose of the partnership he joined was to commit" the substantive offenses underlying each conspiracy count. (Trial Tr. at 643:25–644:8.)

The jury was also instructed that it could consider a conscious avoidance theory of knowledge both with respect to the three conspiracy counts (*id.* at 642:25–645:12), and the single substantive count (*id.* at 645:13–646:1). Kissi did not object to any of these instructions. (*Id.* at 653:2–5.)

shepherding hundreds of thousands of dollars through his bank accounts—until those accounts were shut down for suspected fraud—in purported payment for goods and services he never intended to provide.  The Government introduced evidence, for example, that Kissi received money in exchange for "farm equipment" despite being employed in unrelated security and healthcare industries.  (Trial Tr. at 440:6; GX 401 at 15; S3.)  The jury was well within its discretion to conclude that these "surrounding circumstances" were sufficiently suspicious that they "alone should have apprised defendant[] of the unlawful nature of [his] conduct." *Stinn*, 379 F. App'x at 21 (2d Cir. 2010) (quoting *United States v. Civelli*, 883 F.2d 191, 195 (2d Cir. 1989)); *see United States v. Cuti*, 720 F.3d 453, 463 (2d Cir. 2013) ("Conscious avoidance may be established where a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances established the defendant's purposeful contrivance to avoid guilty knowledge.") (cleaned up). Then, having found the knowledge requirement satisfied as to the unlawful nature of the conspiracies and funds at issue, the same rational jury could comfortably have concluded that Kissi willfully joined those conspiracies and received the stolen funds.

In sum, again viewing the record in the light most favorable to the Government, the Court cannot conclude that this evidence—both on its own, and in conjunction with the corresponding phone records and Baturi's testimony—was too scant for a jury to conclude Kissi possessed the requisite state of mind to sustain his convictions.  Kissi's motion for acquittal therefore fails on these grounds as well.

### C. Closing Arguments

Finally, Kissi argues the Government's closing "overstated key evidence presented at trial and prompted the jury to speculate as to a number of key issues," thus depriving him of a fair trial.

(Def's Mem. at 8–9.)  Specifically, Kissi cites the Government's statements that he (1) laundered "over a million dollars of dirty money"; and (2) "brazenly continued to have other victims . . . send money to bank accounts of a co-conspirator."  (*Id.*)

Neither statement unlocks the relief Kissi seeks.  As a starting point, "[b]oth prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments."  *United States v. Feng Ling Liu*, No. 12-CR-934-01 (RA), 2015 WL 4460898, at *8 (S.D.N.Y. July 20, 2015)[6] (quoting *United States v. Suarez*, 588 F.2d 352, 354 (2d Cir. 1978)).  To be sure, counsel may not "refer to facts that are not in the record," "misstate the evidence," nor "indulge in an appeal wholly irrelevant to any facts or issues in the case."  *United States v. Hollier*, 306 F. Supp. 2d 345, 346 (S.D.N.Y. 2004) (cleaned up) (citing *Viereck v. United States*, 318 U.S. 236, 247 (1943); *Suarez*, 588 F.2d at 354).  But the Government's closing fell well short of violating these commands.

With respect to the "over a million dollars" comment, the Government offered evidence that Kissi had over a million dollars flowing through his own bank accounts during the relevant time period, and that only about $100,000 of those funds could be attributed to legitimate income. (Trial Tr. at 416:10–18, 424:22–429:1; GX 401 at 2, 9.)  It also introduced evidence that Kissi was involved in coordinating the receipt and laundering of roughly $150,000 more through Baturi's accounts.  (Trial Tr. at 173:3–176:11; GX 401 at 37–41.)  This plainly laid a sufficient foundation for the Government's "over a million dollars" argument at closing.

With respect to the Government's contention that Kissi "brazenly continued to have" victims send money to Baturi's accounts, Kissi's argument is based on too narrow a view of what the verb "have" can mean.  Kissi interprets the phrase "have other victims . . . send money to bank

---

[6] *Aff'd sub nom. United States v. Bandrich*, 636 F. App'x 65 (2d Cir. 2016).

accounts" as equivalent to the suggestion that Kissi actually, himself, "directed these victims to send money" to Baturi's accounts. (Def's Mem. at 8.) But the Government never claimed anything of the sort. To the contrary, in its rebuttal—the last word to the jury from either party on this (or any) subject—the Government again clarified that Kissi "never spoke to" the victims: "He wasn't the one who told them the lies. And we have never contested that." (Trial Tr. at 585:13–15.) Rather, the Government argued—as its evidence had suggested—that Kissi played a role in organizing the circumstances that led to the victims sending money to Baturi's accounts. (*See, e.g., id.* at 587:21–588:3.)

The parties' broad latitude at closing can accommodate these varied roles the word "have" can play, particularly where context further illuminates the intended meaning. At worst, therefore, the Government's two complained-of statements "represented fair—if aggressive—inferences that the jury was entitled to draw from the evidence." *United States v. Bonventre*, 646 F. App'x 73, 88 (2d Cir. 2016) (summary order) (citing *United States v. Salameh*, 152 F.3d 88, 138 (2d Cir. 1998)).

Nor did these statements go unchecked. Kissi was "entitled to—and, in fact, did—argue for opposing inferences on the basis of the same evidence." *Bonventre*, 646 F. App'x at 88. Moreover, the jury was instructed several times that "[n]one of what the lawyers have said in their opening statements, closing arguments, questions, or objections is evidence" (Trial Tr. at 594:14–19), and that it must rely upon only its "own recollection of the evidence" (*id.* at 594:13–14). *See Bonventre*, 646 F. App'x at 88 (concerns regarding the Government's closing were "adequately addressed by the district court's instructions that only the jury's own recollection of the evidence controlled").

Thus, not only was the Government's rhetoric grounded in evidence, but to the extent the Government invited jurors to meander towards more remote (but permissible) inferences, there

were sufficient protections in place to corral them from straying too far afield. At that point, it was "up to the jury, not this Court, to determine which of the permissible inferences it w[ould], in fact, draw from that evidence." *Feng Ling Liu*, 2015 WL 4460898, at *8. In sum, nothing in the Government's closing warrants acquittal under Rule 29.

### D. Rule 33 Motion

In his reply brief, for the first time, Kissi requests a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure "in the alternative" to his Rule 29 motion. (Def.'s Reply at 5, ECF No. 83); Fed. R. Crim. P. 33. As a threshold matter, it is not clear that Kissi has preserved his right to move for a new trial. He moves under Rule 33—for the first time—in one sentence at the end of his reply memorandum. (Def.'s Reply at 5, ECF No. 83.) Not only has he deprived the Government of a chance to respond to the motion, but the memorandum was also filed on July 29, 2022—well past 14 days since the verdict entered on June 2, 2022. (Verdict, ECF No. 65.) It is thus likely that Kissi's potential Rule 33 motion is untimely. *See* Fed. R. Crim. P. 33(b) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.").

The Court need not decide whether Kissi's Rule 33 motion is proper, however, because Kissi's arguments do not warrant a new trial. "[A] district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." *United States v. Berry*, No. 20-CR-84 (AJN), 2022 WL 1515397, at *11 (S.D.N.Y. May 13, 2022) (quoting *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020)). Courts in this jurisdiction "review sufficiency challenges raised in a new trial motion in the same fashion as those brought in motions for a judgment of acquittal." *United States v. Encarnacion*, No. 13-CR-30 JSR, 2015

WL 756702, at *1 (S.D.N.Y. Feb. 17, 2015) (quoting *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir.1997)). Therefore, to the extent Kissi properly moves pursuant to Rule 33 for a new trial based on the insufficiency of the Government's evidence, the Court denies that motion for the same reasons it denies the Rule 29 motion.

Further, Kissi's argument regarding purported government overreach in its closing argument does not rise to the "extraordinary circumstances" necessary to trigger the trial court's discretion to order a new trial. *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation marks omitted); *see also United States v. McDaniel*, No. 03-CR-550 (LTS), 2004 WL 1057627, at *5 (S.D.N.Y. May 10, 2004) (new trial was not warranted where a challenged comment from the Government's closing "was but one statement in the context of two weeks of trial testimony and argument"). Thus, Kissi's Rule 33 motion—to the extent it was properly brought—is denied.

## CONCLUSION

For the foregoing reasons, Kissi's Rule 29 motion for acquittal is **DENIED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 79.

Dated: New York, New York
      September 8, 2022

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge